48 CCPA

**TAILOR TEE, INC., Appellant,**

v.

**STEDMAN MANUFACTURING COMPANY, Appellee.**

**Patent Appeal No. 6615.**

United States Court of Customs and Patent Appeals.

Feb. 6, 1961.

Blum, Moscovitz, Friedman & Blum, New York City (David J. Moscovitz, Asher Blum, New York City, Charles R. Allen, Jr., Washington, D. C., of counsel), for appellant.

Mason, Fenwick & Lawrence, Washington, D. C. (G. Cabell Busick, Boynton P. Livingston, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board, 122 U.S.P.Q. 160, sustaining an opposition to the registration of a trademark.

Appellant, Tailor Tee, Inc., sought to register "Tailor-Tee" for "ladies' wearing apparel namely polo shirts, t-shirts, blouses, skirts, and dresses." In 1952, appellant started using its mark only in connection with sales of women's tee shirts [1] but in 1954, use of the mark was

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

1. Items of wearing apparel involved in this case have been variously designated in the record as T-shirts, t-shirts, tee-shirts, and tee shirts. Solely for consistency, "tee shirt" will be used hereinafter when referring to this general type of garment.

extended to the other items of women's sportswear. National sales of "Tailor-Tee" sportswear for women have amounted to more than $4,200,000 with a corresponding advertising expenditure in excess of $100,000.

Appellee, Stedman Manufacturing Company, opposed registration on the ground that "Tailor-Tee" so resembles its own mark, "Tailored T," used continuously throughout the United States since 1947 as an unregistered trademark for men's and boys' cotton knit tee shirts, as to be likely to cause confusion, mistake, or deception of purchasers. National retail sales of tee shirts bearing appellee's mark have amounted since 1952 to more than $10,000,000 and appellee has advertised its goods extensively in nationally distributed consumer and trade publications.

The board sustained the opposition, stating:

"Opposer sells T-shirts for men and boys. Applicant sells T-shirts and other articles of sportswear for women. While these goods are not competitive, they are, to some extent, sold in the same stores, and it is a matter of common knowledge that women frequently purchase underwear for the male members of their families. In view thereof, it is concluded that women purchasers familiar with opposer's 'Tailored T' T-shirts, upon seeing applicant's sportswear for women, including the item of T-shirts sold under the substantially identical mark, 'Tailor-Tee', would suppose that such goods emanated from, or were in some manner sponsored by, opposer, or that there is some trade connection between applicant and opposer."

It should be noted that appellee in its notice of opposition alleged that:

"Applicant's mark Tailor-Tee is merely descriptive of the goods for which registration is sought and is not registrable under Section 2(e) of the Trademark Act of 1946 [15 U.S.C.A. § 1052(e)]."

However, appellee in its brief before this court has stated that it did not press this allegation before the Trademark Trial and Appeal Board. Further, appellee does not argue this point before this court except by stating:

"In view of the close similarity in the names Tailored T and Tailor-Tee, it is immaterial whether either or both of the marks are descriptive of the products on which they are used."

Appellant, on the other hand, alleged as a defense in answer to appellee's notice of opposition that:

" * * * the notation 'Tailored T' as allegedly used by opposer is wholly descriptive as applied to men's and boys' tee-shirts, and that the only mark by which opposer and its goods have been known to the trade and public is the name or mark 'Stedman'."

The board did not discuss these cross allegations as to descriptiveness of the two marks. Appellant in its brief before this court now states:

"Appellee's mark 'Tailored T' may be characterised as a 'weak' mark at best. It is obviously descriptive as applied to T-shirts. This point is not being raised to question or attack the position of appellee to oppose, but rather to emphasize the nature of appellee's mark from the lack of likelihood of confusion aspect.

* * * * * *

"If appellant's mark 'Tailor-Tee' is descriptive, then appellee's mark 'Tailored T' is even more descriptive because 'Tailored' is used by appellee as an adjective whereas 'Tailor' is used by appellant as a noun."

In the same vein, appellant argues further that since appellee's mark "Tailored T" is a weak mark, appellee's rights must be restricted to the men's and boys' underwear field and that the ability of appellee's mark to function as an origin

indicator is minimal. Appellant also argues that its ladies' tee shirts and other goods are specialties distinct from appellee's men's and boys' tee shirts in that the goods are not competitive, are sold in different stores or different departments of the same store, are different in price, are advertised in dissimilar publications, are styled differently, and are respectively outerwear and underwear. It is the contention of appellant that these several factors minimize any likelihood of confusion in spite of the fact, which appellant admits, that women frequently purchase underwear for the male members of their families.

In our opinion, "Tailored T" and "Tailor-Tee" are so similar in sound, spelling, appearance, and meaning that, for the purposes of resolving the issues presented here, we are compelled to treat the marks as being without significant differences. Although, as indicated, at some point in this controversy, each party has relied upon the alleged descriptiveness of the other's mark to support its own contentions, we do not believe either party is in a position to press this argument. Both marks have this characteristic when used on tee shirts. Regardless of the descriptiveness of the marks, if their concurrent use on the respective goods is likely to cause confusion among purchasers, appellant cannot prevail since there is no doubt that appellee is the prior user of its mark.

This brings us to another matter. Appellant contends that the only mark by which appellee's goods have been known is "Stedman." We disagree with appellant. There is ample evidence in the record to prove that appellee's tee shirts are identified by its trademark "Tailored T."

Even though the record reveals that appellant now uses its mark on dresses, blouses, polo shirts and skirts, it origi-nally used the mark on tee shirts and still does. Therefore, irrespective of the other garments for which appellant's mark is now being used and the fact that appellant's tee shirts are intended for women, whereas appellee's are for men and boys, the commercial designation of the garments is the same, that is, tee shirts, and both products might reasonably originate from the same source. It would not be far-fetched to assume that one company manufactures tee shirts for both sexes.

With reference to the marketing of the product, although there is evidence that appellant's goods are sold in women's specialty shops, the record also reveals that the products of both parties are sold in department stores although in different departments of the stores. A more significant factor in this connection is the fact that women not only buy for themselves but, according to the record, they purchase a substantial percentage of the underwear for the adult male members of their families and between 90 and 95% of the undergarments of their male youngsters. Obviously under these circumstances, a female purchaser of tee shirts could very easily become confused as to the origin of these garments when one manufacturer uses the trademark Tailor-Tee and the other, Tailored T.

Upon consideration of all the facts presented to us, we are of the opinion that appellant's mark so resembles appellee's that when appellant's mark is applied to its goods it is likely to cause confusion or mistake or to deceive purchasers. In view of this conclusion we believe that the registration of appellant's mark would be likely to cause damage to appellee. Therefore we affirm the decision of the Trademark Trial and Appeal Board.

Affirmed.